BARRETT REFINING CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–15C, 96–726C, 96–724C,
97–321C, 96–725C.

United States Court of Federal Claims.

Oct. 16, 2001.

Sheryl L. Floyd, U.S. Department of Justice, Washington, D.C., with whom were Acting Assistant Attorney General Stuart E. Schiffer and Director David M. Cohen, U.S. Department of Justice, Washington, D.C., and Karen Schools, Defense Logistics Agency, Fort Belvoir, Virginia, of counsel, for defendant.

James D. Bachman, Washington, D.C., for plaintiff.

*OPINION*

BRUGGINK, Judge.

Pending are the parties' cross-motions for summary judgment after the vacatur and remand by the Federal Circuit in *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed.Cir.2001) (*"Barrett 3"*). In *Barrett 3*, the Federal Circuit upheld the Court of Federal Claims' decision in *Barrett Refining Corp. v. United States*, 42 Fed.Cl. 128 (1998) (*"Barrett 1"*); vacated the Court of Federal Claims' dismissal of the defendant's counterclaims in *Barrett Refining Corp. v. United States*, 45 Fed.Cl. 166 (1999) (*"Barrett 2"*); and remanded for our determination of the amount, if any, that should be refunded to the government. *Barrett 3* at 1065.

BACKGROUND

The essential facts are discussed below. For additional background, see *Barrett 1*, 42 Fed.Cl. 128 (1998) and *Barrett 2*, 45 Fed.Cl. 166 (1999).

This dispute arises from four jet fuel contracts entered into by the Defense Fuel Supply Center, now known as Defense Energy Support Center ("DESC"), and Barrett Refining Corporation ("Barrett"). The jet fuel price paid to Barrett was determined by a fixed base price, subject to an economic price adjustment ("EPA") clause. The EPA clause

was based on the monthly average sales price of refined petroleum products as reported by the Department of Energy, known as the Petroleum Marketing Monthly or PMM. Barrett's qualification as a small disadvantaged business also affected the price of the contracts.

In *MAPCO Alaska Petroleum, Inc. v. United States,* the EPA clause based on the PMM was held unenforceable because it failed to comply with the Federal Acquisition Regulations. 27 Fed.Cl. 405, 408, 416 (1992). Barrett later filed suit here alleging that the EPA based on the PMM in its contract was also unenforceable. In *Barrett 1,* we determined that the EPA clause was invalid and that Barrett should receive at least fair market value for each of the four contracts. 42 Fed.Cl. at 134. In *Barrett 2,* we attempted to determine an appropriate methodology to measure fair market value. Once this calculation was applied to the four contracts, it was apparent that DESC had paid at least fair market value on all but one of the contracts. Defendant was then allowed to amend its answer to assert counterclaims seeking recovery of the payments it made in excess of the fair market value on the other three contracts. Defendant characterizes these payments as unauthorized because the payments were based on the illegal EPA clause. We dismissed the counterclaims, concluding that, because they were equitable in nature, it would be unfair to allow the government, which drafted the illegal clause, to assert counterclaims. *Barrett 2* at 174.

On appeal by both parties, the Federal Circuit disagreed. It vacated the dismissal of the counterclaims and remanded for further consideration. *Barrett 3* at 1058. The Federal Circuit's opinion states that "the government's counterclaims have stated a claim upon which relief could be granted" and this court erred in dismissing them. *Barrett 3* at 1065. The Federal Circuit's directions to this court are as follows:

> On remand the court must determine the amount of the payments made under the unauthorized price escalation clause and order Barrett to refund that to the government, subject to Barrett's claim for fair market value. In that process, the court

should make findings regarding the base price that the government agreed to in each of the contracts in question. If the base price exceeded the fair market value, then the Court of Federal Claims should only order Barrett to refund payments made in excess of the base price.

*Id.* at 1064–65. These instructions seem clear enough. Because they appear to cap the defendant's recovery at either fair market value or base price, whichever is lower, the defendant sought clarification from the Federal Circuit, unsuccessfully. We thus apply the vacatur order in its apparent intent.

Defendant candidly admits that its suggestion for implementing the language of *Barrett 3* is somewhat in tension with the last sentence of the paragraph quoted above. Defendant argues that because all four contracts at issue were unauthorized, the government should receive any amount it paid Barrett in excess of the fair market value of the jet fuel. It suggests that we simply apply the *Barrett 2* formula to determine fair market value and then return the difference between the two amounts to the government as an unauthorized payment. In *Barrett 2,* the court determined that the fair market value of the fuel should be determined by utilizing the base price (found in the original contract) and a modified EPA clause that uses the Platt's Oilgram Spot (Low) index (as opposed to using the Petroleum Marketing Monthly which this court found unauthorized). Defendant believes that the court should take the amount that the government actually paid Barrett on each contract and subtract the fair market value (the maximum owed to Barrett based on the quantum valebant theory in *Barrett 1*).

Plaintiff, on the other hand, points to what it believes is the plain language of the remand order to support its position that the base price, as well as fair market value, serves as a cap on the counterclaims. But it also defends this limitation as legally proper. It contends that the government's payments to Barrett did not exceed the contract base price and, therefore, were not unauthorized. This is due to the serendipity that prices declined rather than increased during the contract period. Plaintiff argues that the

base price is a fully authorized and legal price because the contracting officer had authority to promise to pay these prices. It points out that if there had been no change in the market price and thus no escalation based on the unauthorized EPA, the base price is the amount that the government would have paid Barrett. Plaintiff, in short, claims the right to keep whatever the government, which has the burden of proof on its counterclaims, cannot legally recoup.

### DISCUSSION

■ We see no reason not to implement a literal reading of the Federal Circuit's remand instructions. The court did not grant the defendant the difference between the fair market value and the government's actual payments. Instead it limited recovery to the amounts paid over fair market value, but only to the extent the government had not agreed to pay more, in the form of the base price. As the Federal Circuit noted, the government's payments were only partially unauthorized: "The unauthorized portion presumably being the entire amount of the price escalation(s), because it was this amount that was calculated according to an illegal method." *Id.* at 1062. The circuit court went beyond that, however, and also stated that, "[i]f the base price exceeded the fair market value, then the Court of Federal Claims should only order Barrett to refund payments made in excess of the base price." *Id.* at 1065. Presumably this is so because the government had a right to agree to pay Barrett in excess of the fair market value, so long as the price was not adjusted by an illegal escalator. *See Barrett 3* at 1062 n. 3

We disagree with the defendant's concern that the circuit court's opinion cannot be literally applied to the initial base prices set in each contract. Limiting recovery to the stated contract base price makes sense for three reasons. First, although the DESC explicitly stated in its solicitation that it did not want "firm offers," the base prices were the basis for the contract award. Moreover, if there had been no adjustment in the base price, in other words if the PMM reported no change in the fair market value from the time of base price until payment, the government would have paid base price. The base price was thus not an artificial one, but instead an amount contemplated by both parties as the possible amount for payment. Finally, in three of the four contracts the government benefitted from the EPA clause (because it paid less than the base price).

The Federal Circuit directed this court to "make findings regarding the base price that the government agreed to in each of the contracts in question." *Barrett 3* at 1065. Application of the Federal Circuit's directions results in the following:

Contract 0512

| | | |
|---|---|---|
| $27,408,054 | (Barrett's claim for fair market value) | |
| −$25,861,625 | (total payment) | |
| $ 1,546,429 | (amount still owed to Barrett) | |
| <$25,092,729> | (base price) | |

Although the total payment is greater than the base price, the fair market value is still greater than the amount received by Barrett, therefore the government must pay Barrett fair market value for its fuel.

Contract 0505

| | |
|---|---|
| $35,249,400 | (total payment) |
| $35,206,403 | (fair market value) |
| $38,714,821 | (base price) |

Contract 0577

| | |
|---|---|
| $49,838,768 | (total payment) |
| $47,719,428 | (fair market value) |
| $53,289,548 | (base price) |

Contract 0492

| | |
|---|---|
| $29,781,692 | (total payment) |
| $29,049,678 | (fair market value) |
| $29,820,575 | (base price) |

In these last three contracts the payment to Barrett exceeds the fair market value but the government does not recover because the payment to Barrett is still less than the base price.

Defendant also argues that it is entitled to offset any payments above the fair market value against the underpayment of contract 0512. The plaintiff contends that the "no set-off" provision of the Assignment of Claims Act 31 U.S.C. § 3727 (1994); 41 U.S.C. § 15 (1994), bars the government from setting off payments and liabilities on government contracts. It is unnecessary to question. As discussed above, we do not believe that any overpayments have been made by the government, therefore no basis for offset exists.

## CONCLUSION

Consistent with this opinion, defendant's counterclaims are dismissed with respect to all four contracts. The clerk is directed to enter judgment accordingly. The judgment entered by this court on October 29, 1999 is not affected[1].

---

1. Judgment for the plaintiff in the amount of $1,546,429, plus interest pursuant to 41 U.S.C. § 611 (1994) from May 5, 1997 was not changed by the Federal Circuit's remand.